*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0392p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 06-5787

MICHAEL A. ROBINSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 00-00129—James H. Jarvis, District Judge.

Argued: July 26, 2007

Decided and Filed: September 26, 2007

Before: SILER and COOK, Circuit Judges; REEVES, District Judge.*

_____

## COUNSEL

**ARGUED:** Herbert S. Moncier, LAW OFFICES OF HERBERT S. MONCIER, Knoxville, Tennessee, for Appellant. David C. Jennings, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Herbert S. Moncier, LAW OFFICES OF HERBERT S. MONCIER, Knoxville, Tennessee, for Appellant. David C. Jennings, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

_____

## OPINION

_____

DANNY C. REEVES, District Judge. Defendant-Appellant Michael A. Robinson was convicted by a jury of various drug and firearms offenses and sentenced *in absentia* to 352 months' imprisonment. He appealed his conviction and sentence. This Court affirmed the conviction but vacated the sentence and remanded the matter for resentencing. Robinson now appeals his most recent 292-month sentence. For the reasons that follow, we affirm this sentence.

---

*The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## BACKGROUND

A detailed discussion of the facts leading to Robinson's conviction and first sentencing is set out in *United States v. Robinson*, 390 F.3d 853 (6th Cir. 2004). The following discussion focuses on Robinson's second sentence and current appeal.

Following a jury trial, Robinson was convicted of conspiracy to distribute marijuana and cocaine, possession with intent to distribute marijuana, two counts of carrying firearms during and in relation to drug trafficking offenses, and being a felon in possession of a firearm. The jury concluded that Robinson was involved in a marijuana conspiracy which included less than fifty kilograms of marijuana *and* a cocaine conspiracy which included at least five kilograms of cocaine.

Prior to sentencing, Robinson escaped and fled to Brazil. The district court sentenced him *in absentia* on November 27, 2001, to a total of 352 months' imprisonment. Following the sentencing hearing, Robinson was apprehended in Brazil and extradited on the drug – but not the firearms – convictions. Robinson appealed his conviction and sentence, raising a number of pre-trial, trial and sentencing issues. This Court affirmed his convictions but vacated his sentence and remanded the matter for resentencing because the district court failed to comply with its fact-finding obligations under Rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure. This Court also directed the district court, on remand, to address issues related to the Robinson's extradition.

On remand, Robinson attempted to challenge his sentence on various grounds, including grounds raised previously. In particular, he argued that the district court erred in sentencing him for involvement in the cocaine conspiracy and erred in enhancing his sentence for his role in the offense and for obstruction of justice. Robinson also moved the Court to dismiss the firearms convictions, claiming that any punishment for those offenses would violate the extradition treaty with Brazil. In addition, he requested "supplemental discovery" on various sentencing issues and filed a motion for a variance from the United States Sentencing Guidelines ("U.S.S.G.") § 5K2.0 and the rule of lenity, contending that there was "residual doubt about [his] responsibility for possession or distribution of cocaine." After addressing the issues raised through his motions and considering evidence presented by Robinson regarding his objections to the enhancements for obstruction of justice, the drug amount, and his role in the offense, the district court imposed a sentence of 292 months' imprisonment, which was within his properly-calculated guideline range. Pursuant to the extradition treaty with Brazil, the court did not sentence Robinson on the firearms convictions. Robinson now appeals the sentence imposed following remand.

## DISCUSSION

### A.     The Limited Remand

As an initial matter, we must determine whether this Court's previous remand of this case was a general or limited remand. 28 U.S.C. § 2106. When this Court issues a general remand, the district court may resentence a defendant de novo. *United States v. Orlando*, 363 F.3d 596, 601 (6th Cir. 2004). However, when a limited remand is issued, "a district court's authority is constrained to the issue or issues remanded." *Id*. (internal quotations marks omitted). In determining whether a remand is limited or general, we consider the "specific language used in the context of the entire opinion or order." *United States v. Campbell*, 168 F.3d 263, 267-68 (6th Cir. 1999).

The language of this Court's prior order suggests that it was a limited remand. Rather than instructing the lower court to "begin anew" in considering the validity of Robinson's sentence, the matter was remanded for the exclusive purpose of allowing the district court to "make the requisite factual findings in support of its application of the Sentencing Guidelines" with respect to three specific issues: (1) Robinson's criminal history score for committing the offenses while on probation; (2) the drug amount for which Robinson was responsible; and (3) the enhancement for

Robinson's role in the offense.  *See, e.g., United States v. Hebeka*, 89 F.3d 279, 285 (6th Cir. 1996). Additionally, the district court was directed to address "the extradition-related" issues.  It is also notable that, following remand but before Robinson was resentenced, the Supreme Court issued its decision in *United States v. Booker*, 543 U.S. 220 (2005).  As a result, the parties recognized and the district court acknowledged that, in light of the intervening *Booker* decision, the scope of the issues on remand would be expanded.

The district court complied with this Court's directive following remand.  With respect to his criminal history score, Robinson conceded following remand that he was on probation at the time he committed the offenses in this case.  At the second sentencing hearing, the district judge addressed the criminal history score calculation, specifically noting that he had received records from Los Angeles East Superior Court which indicated that Robinson was on probation at the time he committed of the instant offenses.  After conceding the issue before the district court, Robinson cannot now claim that the court improperly calculated his criminal history score under U.S.S.G. § 4A1.1(d).

With respect to the drug quantity issue, the district court noted that the jury's verdict and Robinson's subsequent of appeal of the issue prevented it from re-visiting the issue on remand. Despite this finding, Robinson continues to assert that he should not have been sentenced for his involvement in the cocaine conspiracy.  However, the law of the case doctrine precludes the relief sought by Robinson.  *See Arizona v. California*, 460 U.S. 605, 618 (1983) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994).  "Determinations by a Court of Appeals become the law of the case and are binding on both the district court on remand and the Court of Appeals upon subsequent appeal." *United States v. Haynes*, 468 F.3d 422, 426 (6th Cir. 2006).

The district court also made specific findings concerning the four-level enhancement for Robinson's role in the offense.  It not only considered the evidence of record but allowed Robinson to present additional evidence on this issue at the second sentencing hearing.  Robinson testified and denied, *inter alia*, having any knowledge of the cocaine conspiracy and having any role in supervising or managing any other co-conspirator's activities.  In addition, Robinson presented the testimony of his mother, his grandmother and John Robinson.  However, the court concluded that:

> the testimony of the coconspirators and the government's witnesses that the preponderance of the evidence here show that the jury could very well have found, and I find, that you were one of the organizers or leaders of the conspiracy . . . [t]he conspiracy consisted of at least five participants, Brady, McGill, Barnes, Procks and Robinson.
>
> Robinson recruited McGill in the conspiracy to pick packages of marijuana up from mail centers.  The defendant Robinson was observed counting large amounts of money, between 20 and $35,000 and he paid McGill only 500 to $600 per package that he retrieved from the mailboxes.  Testimony of Dena Carmichael revealed that the defendant had a source in California which he obtained identification cards for other members of he conspiracy to facilitate the opening of mailboxes.  Daniel McGill used one of the false identifications to open the box in the name of James Evans.  As I said earlier or indicated earlier.  Mr. Robinson was the (sic) apparently the key to the source for the marijuana and perhaps other drugs in California.

The record reflects the district court made specific, evidence-based findings with respect to enhancing Robinson's sentence for being a manager or supervisor in a conspiracy involving five or more participants.  Therefore, the district court's decision to enhance Robinson's sentence for his

role in the offense was not clearly erroneous.  *See United States v. Gates*, 461 F.3d 703, 709 (6th Cir. 2006) (a district court's decision concerning a defendant's role in an offense is reviewed for clear error).

Additionally, following remand, the district court addressed "the extradition-related concerns" of the parties.  *Robinson*, 390 F.3d at 889.  The extradition treaty provides, in relevant part, that:

> A person extradited by virtue of the present Treaty may not be tried or punished by the requesting State for any crime or offense committed prior to the request for his extradition, other than that which gave rise to the request, nor may he be re-extradited by the requesting State to a third country which claims him, unless the surrendering State so agrees or unless the person extradited, having been set at liberty within the requesting State, remains voluntarily in the requesting State for more than 30 days from the date on which he was released.  Upon such release, he shall be informed of the consequences to which his stay in the territory of the requesting State would subject him.

In accordance with the extradition treaty, the district court did not try or punish Robinson on the firearms convictions.  In fact, it gave full effect to the treaty by not sentencing Robinson on the firearms convictions.  Because extradition does not affect the validity of a prior conviction, the district court properly denied Robinson's motion to dismiss these convictions.

### B.        Review of the *Booker* Claims is not Foreclosed by the Limited Remand.

As a general matter, this Court lacks authority to consider any issues on appeal that were beyond the scope of the limited remand.  *See Orlando*, 363 F.3d at 602 (holding that the court "lacked the authority" to consider issues outside the scope of the limited remand); *Campbell*, 168 F.3d at 269 (holding that the limited remand excluded all other issues from further consideration).  However, we are not foreclosed from reviewing Robinson's *Booker* claims.  *Booker* had not been decided when Robinson initially appealed his conviction and sentence.  Further, following remand, the district court recognized its responsibility to resentence Robinson in accordance with *Booker*, taking into account the advisory nature of the Guidelines and the sentencing factors set forth in 18 U.S.C. § 3553(a).  *See, e.g., United States v. McDaniel*, 398 F.3d 540 (6th Cir. 2005) (finding no waiver of right to raise *Booker* challenge when neither *Booker* nor *Blakely* was decided at the time of sentencing or when the appellate briefs were due).  Thus, Robinson has not waived his right to raise *Booker* claims.  *Id*. at 546 (noting that waiver is the "intentional relinquishment or abandonment of a known right").

In *Booker*, the Supreme Court held that the Sentencing Guidelines, which had previously been mandatory, are now advisory.  "[A] district court is permitted to vary from those guidelines in order to impose a sentence which fits the mandate of [18 U.S.C.] 3553(a)."  *United States v. Murillo-Monzon*, No. 06-1776, 2007 WL 2052247, at *3 (6th Cir. July 18, 2007) (citing *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (internal quotation marks omitted)).  We review sentences for both procedural and substantive reasonableness.

Procedurally, a district court must "explain[] its reasoning to a sufficient degree to allow for meaningful appellate review."  *United States v. Trejo-Martinez*, 481 F.3d 409, 412-13 (6th Cir. 2007).  The sentencing court must consider the applicable Guideline range as well as the other relevant factors outlined in 18 U.S.C. § 3553(a).  However, the court is not required to explicitly consider each of the factors or engage in a "ritualistic incantation."  *Id*. at 413.  "A sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what

the judge deems an appropriate sentence without such required consideration." *United States v. Jones*, 489 F.3d 243, 250-51 (6th Cir. 2007) (citing *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) (internal quotation marks omitted)).

Substantively, a sentence that falls within "a correctly calculated guideline range" is "entitled to a rebuttable presumption of reasonableness." *Trejo-Martinez*, 481 F.3d at 413 (citing *United States v. Cruz*, 461 F.3d 752, 754 (6th Cir. 2006)). However, a sentence may be substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor. *Jones*, 489 F.3d at 252 (citing *Ferguson*, 456 F.3d at 664 (internal quotation marks omitted)).

Robinson has asserted a number of reasons why the sentence imposed by the district court was both procedurally and substantively unreasonable. Here, the district court sentenced Robinson within the advisory Guideline range and, therefore, his sentence is "credited with a rebuttable presumption of reasonableness." *United States v. Crowell*, __ F.3d __, 2007 WL 1814333, at *6 (6th Cir. June 26, 2007). Thus, it is "incumbent upon [Robinson] to establish that his sentence was unreasonable." *Id*.

### 1.     Robinson's Involvement in the Cocaine Conspiracy

Robinson argues that his sentence is unreasonable because, despite the jury's specific finding that he was guilty of the cocaine conspiracy, the district court "failed to consider or exercise its authority to [only] sentence [him] to the marijuana object of the conspiracy." As noted above, the district court adequately considered the issue of the drug amount and concluded that the jury's determination regarding the amount and type of drugs for which Robinson was responsible foreclosed reconsideration of the issue. In particular, the court specifically noted that "the jury here found beyond a reasonable doubt that [he] w[as] responsible for less than 50 kilograms of marijuana and five or more kilograms of cocaine" and that he "was not going to go back into the drugs in this case." The district court did not err in reaching this determination.

### 2.     Robinson's Role in the Offense and his Obstruction of Justice

Robinson also challenges the reasonableness of his sentence, arguing that the district court erred in applying the Guidelines. Specifically, he claims that the district court erred in applying a four-level enhancement pursuant to U.S.S.G. § 3B1.1 for his role in the offense and a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. Again, as noted above, Robinson argued at the resentencing hearing that his sentence should not be enhanced based on his role in the offense because the evidence did not demonstrate that there were five participants involved in the marijuana and/or the cocaine conspiracies.[1] The Sentencing Guidelines allow a four-level enhancement if a defendant is an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Contrary to Robinson's assertion, a defendant whose sentence is enhanced under § 3B1.1(a) need only supervise or manage one of the five or more other participants. *See* U.S.S.G. § 3B1.1 cmt. n.2. Participants include those persons "who were (i) aware of the criminal objective, and (ii) knowingly offered their assistance." *See United States v. Anthony*, 280 F.3d 694, 698 (6th Cir. 2002).

---

[1] In a related argument, Robinson contends that the district court erred by making improper adjustments to his sentence under U.S.S.G. § 2X1.1(a). Robinson did not raise this issue in his first appeal. As a result, he is foreclosed by the law of the case doctrine from raising this argument now. *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997). Nevertheless, we note that the district court did not apply U.S.S.G. § 2X1.1 in calculating Robinson's sentence.

As discussed previously, the district court considered the evidence of record and concluded that, at a minimum, Robinson recruited and directed the criminal actions of Daniel McGill. Moreover, the court found that Robinson played an organizational or leadership role in "criminal activity" involving five or more participants (Robinson, McGill, Brady, Barnes and Procks). Because the evidence cited by the district court supports its conclusion that Robinson had a managerial or supervisory role, there is no merit to the claim that Robinson's sentence was unreasonable based on the court's application of the enhancement for his role in the offense.

With respect to Robinson's obstruction of justice argument, the Sentencing Guidelines authorize a two-level upward adjustment if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction" and "the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1. The obstructive conduct must occur "during the course of the investigation . . . of the instant offense" and be "related to . . . the defendant's offense of conviction and any relevant conduct." *See United States v. Baggett*, 342 F.3d 536, 542 (6th Cir. 2003). In addition, Application Note 4(e) of U.S.S.G. § 3C1.1 establishes that "escaping . . . from custody before trial or sentencing" is an example of conduct to which the obstruction of justice enhancement applies.

Robinson has not disputed that he escaped from federal custody prior to his initial sentencing. However, he argues that application of the enhancement for obstruction of justice violates the extradition treaty with Brazil because it constitutes "punishment" for the escape. In *United States v. Garrido-Santana*, 360 F.3d 565 (6th Cir. 2004), this Court rejected a similar argument. There, the Court held that the application of the § 3C1.1 enhancement to the defendant's sentence for his failure to appear at his arraignment did not constitute "punishment" so as to violate the proscription against such punishment in the extradition treaty. Likewise, the extradition treaty in issue contains a "Rule of Speciality" provision, which provides that Robinson shall not be punished for any offense upon which he was not extradited.

The evidence supports the district court's application of the obstruction of justice enhancement, and, in light of *Garrido-Santana*, application of the enhancement did not violate any proscription against punishment in the extradition treaty.

### 3.     Application of § 3553(a) Factors

Robinson also contends that his sentence was unreasonable because the district court failed to adequately consider applicable factors under 18 U.S.C. § 3553(a). It is now well-settled that a district court is not required to recite and analyze each § 3553 factor in order for the appellate court to conclude that the sentence imposed is procedurally reasonable. Instead, the court must "provide a reasoned explanation for its choice of sentence and its explanation must be sufficiently thorough to permit meaningful appellate review." *United States v. Blackwell*, 459 F.3d 739, 773 (6th Cir. 2006).

Here, the district judge sentenced Robinson within the appropriate advisory guideline range. And "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Rita v. United States*, 127 S.Ct. 2456, 2468 (2007). In fact, the *Rita* Court noted that "[c]ircumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical." *Id*. Moreover, "[w]here a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively." *Id*. at 2469.

The record reflects that Robinson's "personal circumstances . . . were simply not different enough to warrant a different sentence." *Murillo-Monzon*, 2007 WL 2052247, at *6 (citing *Rita*, 127 S.Ct. at 2469). The district judge specifically listed *some* of the § 3553(a) factors he considered in determining Robinson's sentence.[2]   And while the district court could have given a longer explanation for the sentence imposed, he sufficiently articulated his reasons for imposing the selected sentence, particularly in light of the Supreme Court's recent decision in *Rita*. "*Rita* simply requires the sentencing judge to set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Murillo-Monzon*, 2007 WL 2052247, at *7 (citing *Rita*, 127 S.Ct. at 2458) (internal quotation marks omitted).

It bears repeating that this was the second time the district court sentenced Robinson on these charges. In both instances, the court selected a sentence within the advisory Guideline range. While the judge at resentencing chose a sentence at the lower end of the Guideline range, he specifically stated that the reduction was reflective of his obligation not to sentence Robinson on the firearms charges pursuant to the extradition treaty with Brazil. Thus, he articulated a specific reason for imposing a reduced sentence on remand. Robinson has failed to rebut the presumption of reasonableness that is accorded his Guideline sentence. After reviewing the findings of the district court at the sentencing hearings, we conclude that his sentence was reasonable. *See Crowell*, 2007 WL 1814333, at *6 (noting that a sentence within the advisory Guideline range is "credited with a rebuttable presumption of reasonableness").

### 4.      The Alleged Failure to Comply with This Court's Remand Directive

Robinson also argues that his sentence was unreasonable because the district court failed to follow this Court's remand directive. However, as noted above, the district court made specific findings in support of its application of the Sentencing Guidelines with respect to the issues outlined in this Court's prior opinion. We find no error in following this Court's prior opinion and instructions.

### 5.      Denial of Discovery Motions

Finally, Robinson contends that the district court abused its discretion in denying his motions for sentencing discovery. In particular, Robinson sought to obtain his co-defendants presentence reports and other documents to support his claim that the district court, on remand, should reduce his sentence to avoid unwarranted sentencing disparities in accordance with 18 U.S.C. § 3553(a)(6).[3] Robinson relies, in part, on Rule 16[4] of the Federal Rules of Criminal Procedure which provides that the government "must permit the defendant to inspect and to copy or photograph books, papers,

---

[2] In determining whether the district court adequately explained its reasoning, this Court may consider the findings made in conjunction with the original sentencing hearing.

[3] Robinson argues that the sentence imposed by the district court was unreasonable because the court failed to consider the disparity between his sentence and that of his co-defendant's. However, in *United States v. Simmons*, __ F.3d __, 2007 WL 2428409, at *2 (6th Cir. Aug. 29, 2007), this Court recognized that § 3553(a)(6) is concerned with nationally uniform sentences among defendants with similar criminal backgrounds convicted of similar criminal conduct and not with the disparities between the sentences of co-defendants. However, the *Simmons* Court noted that district courts are not prohibited from considering the disparities in the sentences of co-defendants.

[4] Robinson also cites Rule 32(i)(1)(B) of the Federal Rules of Criminal Procedure. However, that rule requires the court, not the government, to "give the defendant . . . a written summary of . . . any information excluded from the presentence report . . . on which the court will rely in sentencing." The district judge acknowledged his responsibility to provide Robinson with materials outside the presentence report on which he relied in imposing the sentence. This forecloses Robinson's argument under *United States v. Hamad*, __ F.3d __, 2007 WL 2049867 (6th Cir. July 19, 2007).

documents, data, photographs, tangible objects, buildings or places" in their possession that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). In *United States v. Armstrong*, 517 U.S. 456 (1996), the Supreme Court concluded that "defense" means a "defendant's response to the Government's case in chief." *Id*. at 462. Therefore, the Court determined that Rule 16(a)(1)(c), the predecessor rule to Rule 16(a)(1)(E)(i), applies only to "shield" claims that "refute the Government's arguments that the defendant committed the crime charged." *Id*.

Robinson's request for discovery falls outside the language of Rule 16(a)(1)(E)(i) because he was not seeking the discovery to aid in the preparation of his defense. Rather, he was attempting to obtain the discovery for the purpose of gathering materials to support various sentencing arguments. *See United States v. Brinson*, 208 F. App'x 420 (6th Cir. 2006) (unpublished) (noting that Rule 16 was intended only to extend to issues impacting the defendant's culpability). Because the discovery sought by Robinson was not material to his defense, the district court did not abuse its discretion in denying his discovery requests.

## CONCLUSION

We **AFFIRM** the sentence imposed by the district court following remand.